UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

MARY ANN CALISE,                  :

               Plaintiff,      :

                             :

v.                             :       **OPINION AND ORDER**

                             :

NEW YORK STATE DEPARTMENT OF    :       17 CV 791 (VB)

MOTOR VEHICLES,              :

               Defendant.   :

--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Mary Ann Calise, proceeding pro se and in forma pauperis, brings this action

under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"),

42 U.S.C. § 1983 ("Section 1983"), the New York State Human Rights Law ("NYSHRL"), and

the New York City Human Rights Law ("NYCHRL"), alleging defendant New York State

Department of Motor Vehicles ("DMV") discriminated against her on the basis of race and color.

      Before the Court is defendant's motion to dismiss the amended complaint pursuant to

Rules 12(b)(1) and 12(b)(6) (Doc. #21) and plaintiff's cross-motion for leave to amend her

complaint, which plaintiff asserted in her opposition. (Doc. #29).

      For the reasons set forth below, defendant's motion is GRANTED IN PART and

DENIED IN PART. Plaintiff's cross-motion is GRANTED.

      The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

      For the purpose of deciding the motion to dismiss, the Court accepts as true all well-

pleaded factual allegations in the amended complaint, and draws all reasonable inferences in

plaintiff's favor, as summarized below. Because plaintiff is proceeding pro se, the Court also

considers allegations made for the first time in plaintiff's opposition to the motion to dismiss.

<u>See</u>, <u>e.g.</u>, <u>Vlad-Berindan v. MTA N.Y.C. Transit</u>, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014).[1]

A.    <u>DMV</u>

Plaintiff, a white woman, worked at a DMV office in White Plains, NY, as a Motor Vehicles Representative ("MVR"), from July 2008 until October 16, 2017. Plaintiff was one of four white employees out of approximately twenty-six office employees.

Beginning in 2010, plaintiff reported directly to Andrea Parker, a black woman and a Supervisory Motor Vehicle Representative ("SMVR"). Parker "controlled all aspects of [plaintiff's] work." (Am. Compl. ("AC") ¶ 5). In July 2013, Frank Chevere, a Hispanic man and an SMVR, became plaintiff's supervisor. However, Parker, as an SMVR, allegedly retained supervisory authority over plaintiff.

First, plaintiff alleges that throughout her employment at the DMV, Parker took several disciplinary and employment decisions against plaintiff on account of her race. Through 2017, Parker "regularly den[ied] [plaintiff] the opportunity to earn overtime" in favor of black employees. (AC ¶ 8; Opp'n at 5). Plaintiff also failed her annual evaluations while Parker was her direct supervisor in 2010, 2011, and 2012, and thus was ineligible for a pay raise.

In addition, through 2017, whenever plaintiff would arrive late, Parker would give her a notice of discipline. Such notices were used for compensation decisions, termination decisions, performance evaluations, and could cause plaintiff to receive a fine. Parker allegedly did not issue notices of discipline to black employees for the same conduct, and occasionally assisted them in entering late without the other supervisors noticing.

---

[1]    Because plaintiff is proceeding <u>pro se</u>, she will be provided with copies of all unpublished opinions cited in this ruling. <u>See</u> <u>Lebron v. Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009).

Parker also allegedly punished plaintiff, but not other employees, for taking unauthorized breaks. Further, on March 24, 2015, plaintiff received "a memo" for incorrectly registering a car, although Parker allowed a black employee to correct the same error without receiving a disciplinary memo. (AC ¶ 25).

In late September 2017, Parker allegedly required plaintiff to get a note from her doctor after being out on sick leave, causing plaintiff to lose a day's salary by making her go home to get it. According to plaintiff, "black employees were not required to get new notes from their doctors when they came back to work." (AC ¶ 30).

Second, plaintiff alleges Parker made several racially-tinged comments. On March 5, 2015, Parker called a co-worker "Brother Malcolm" in front of plaintiff. (AC ¶ 23). In March 2015, Parker referred to black employees, but not white or Hispanic employees, as "brother" and "sister." (Opp'n at 4).

Third, plaintiff alleges Parker generally treated black employees better than she treated plaintiff. Plaintiff requested from Parker a special medical chair as early as 2011, but did not receive one until 2014, whereas a black employee received a medical chair three weeks after requesting one. Parker also did not invite plaintiff to a "special lunch in the back room of the DMV" because plaintiff was white. (Opp'n at 3). Further, Parker did not take up a collection for plaintiff when she fell on hard times, which Parker did for black employees who had financial hardship. And on February 10, 2015, Parker sang gospel music with other employees.

On September 30, 2016, plaintiff was unable to call customers to her window because of a computer problem, but Parker ignored requests to fix it. On April 3, 2017, Parker tried to "audit" plaintiff's station. (AC ¶ 29).

B.     Complaints

In August 2014, plaintiff filed a complaint against Parker with Grace Pell, a DMV employee, in which plaintiff detailed how Parker let black employees, but not plaintiff, take unauthorized breaks.  On March 10, 2015, in response to plaintiff's complaint, Parker said, in front of but not to, plaintiff, "[s]nitches get stitches." (AC ¶ 24).

On May 29, 2015, plaintiff filed a charge of discrimination with the New York State Department of Human Rights (the "DHR Charge").[2]

In the DHR Charge, plaintiff alleged Parker:

- referred to plaintiff as the office snitch;

- made racist remarks concerning listening to gospel music and by calling another black employee, "Brother Malcolm";

- allowed black employees, but not plaintiff, to come in late but sign in as if they arrived on time;

- denied plaintiff personal leave time and other privileges, which she allowed others;

- denied plaintiff overtime pay;

- required plaintiff, but not other employees, to inform her when she wanted to take a bathroom break; and

- redirected customers from plaintiff to other employees.

---

[2]     Although plaintiff did not attach the DHR Charge or other DHR filings to her amended complaint, the Court may consider them because plaintiff relies on them to satisfy Title VII's and NYSHRL's time limit requirements.  See Holowecki v. Fed. Express Corp., 440 F.3d 558, 565–66 (2d Cir. 2006).

(O'Loughlin Decl. Ex. 1 ("DHR File") at 11).[3]  Plaintiff did not provide the dates of these allegations.  However, in the DHR Charge plaintiff wrote the most recent act of discrimination occurred on April 14, 2015.

On November 24, 2015, plaintiff filed another complaint with Pell because Parker "wrongfully blamed [plaintiff] for causing a customer's outburst on the floor."  (AC ¶ 27).

On November 25, 2015, the DHR issued a "Determination and Order After Investigation" dismissing plaintiff's DHR Charge.  (DHR File at 2).  Because Parker was removed as plaintiff's supervisor in 2013, the DHR found the alleged acts occurred more than a year prior to the filing of the DHR Charge.  The DHR thus found plaintiff's claims were time-barred under the NYSHRL and fell "outside the purview of review by [the DHR]."  (DHR File at 2–3).

Plaintiff obtained a right to sue letter on November 2, 2016.

On October 11, 2017, Parker allegedly told plaintiff, "You bothered one of us, you bother all of us."  (AC ¶ 32).  Plaintiff believes Parker said this because of plaintiff's complaints against her.

On October 16, 2017, plaintiff resigned from the DMV because of "harassment and retaliat[ion]."  (AC ¶ 34).

## DISCUSSION

I.      Standard of Review

A.      Rule 12(b)(1)

"'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress."

---

[3]      "DHR File at __" refers to the automatically generated page numbers at the top of electronically filed documents.

Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (quoting Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978)). "A 'case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). The party invoking the Court's jurisdiction bears the burden of establishing that jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

When deciding whether subject matter jurisdiction exists at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d at 143. "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992) (citing Norton v. Larney, 266 U.S. 511, 515 (1925)).

B.     Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiffs' legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The Court may nevertheless consider a document not incorporated by reference if the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). However, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." Id. (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." Id. (quoting Faulkner v. Beer, 463 F.3d at 134).

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir.

2010) (internal quotation marks and citation omitted).  Nor may the Court "invent factual

allegations" plaintiff has not pleaded.  Id.

II.    Eleventh Amendment

As this Court previously ruled, the Eleventh Amendment bars plaintiff's claims under the

NYSHRL against the DMV.  (See Order of Service, dated Feb. 14, 2017; Doc. #5).  Plaintiff's

NYCHRL, Section 1983, and Section 1981 claims against the DMV are barred for the same

reason.

"[A]s a general rule, state governments may not be sued in federal court unless they have

waived their Eleventh Amendment immunity, or unless Congress has abrogated the states'

Eleventh Amendment immunity."  Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009)

(internal quotations omitted).  "[T]he immunity recognized by the Eleventh Amendment extends

beyond the states themselves to state agents and state instrumentalities that are, effectively, arms

of a state."  Id. (internal quotation omitted).

Plaintiff's claims do not fall within an exception to state sovereign immunity under the

Eleventh Amendment.  "New York has not waived its immunity and consented to suit in federal

court under [Section] 1981 or [Section] 1983, and Congress's enactment of [Section] 1981 and

[Section] 1983 did not override the immunity that the states and their agencies enjoy under the

Eleventh Amendment."  Cajuste v. Lechworth Developmental Disabilities Serv., 2005 WL

22863, at *3 (S.D.N.Y. Jan. 5, 2005) (internal citations omitted).

Likewise, New York has not waived its sovereign immunity for NYSHRL or NYCHRL

claims in federal court.  Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) (NYCHRL);

Widomski v. State Univ. of N.Y. (SUNY) at Orange, 933 F. Supp. 2d 534, 554 n.16 (S.D.N.Y.

2013) (NYSHRL), aff'd, 748 F.3d 471 (2d Cir. 2014)).

Accordingly, plaintiff's NYSHRL, NYCHRL, Section 1983, and Section 1981 claims against the DMV are dismissed.

III.    Exhaustion

Defendant argues plaintiff's Title VII claims against the DMV in the DHR Charge must be dismissed as time-barred.

The Court disagrees.

Under Title VII, "a claimant may bring suit in federal court only if she has filed a timely complaint with the [Equal Employment Opportunity Commission ("EEOC")] and obtained a right-to-sue letter." Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001) (citations omitted). "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal court." Id. (quoting Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000)). "[T]he burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense." Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 491 (2d Cir. 2018).

In New York, a plaintiff must file a charge within 300 days of a defendant's alleged discriminatory acts before pursuing a Title VII claim in federal court. See 42 U.S.C. § 2000e–5(e)(1); see also Bascom v. Fried, 116 F. App'x 300, 302 (2d Cir. 2004) (summary order). "The charge may be filed with either the EEOC or the DHR." Miller v. N.Y.C. Health & Hosp. Corp., 2004 WL 1907310, at *3 (S.D.N.Y. Aug. 25, 2004) (internal citation omitted). The Court is not bound to accept the EEOC's determination that a complaint is untimely. Weise v. Syracuse Univ., 522 F.2d 397, 413 (2d Cir. 1975).

At this early stage and drawing all reasonable inferences in plaintiff's favor, the Court cannot conclude plaintiff's claims are time-barred. First, in the DHR Charge, plaintiff wrote that the most recent act of discrimination occurred on April 14, 2015, which was within 300 days of the filing of the DHR Charge on May 29, 2015. Second, plaintiff alleges in her amended complaint and opposition she was denied the opportunity to earn overtime throughout her employment at the DMV, an allegation plaintiff also made in the DHR Charge. Third, the DHR found Parker was removed as her supervisor in 2013, but in her opposition plaintiff alleges Parker continued to supervise her through 2017.

Fourth, in the amended complaint plaintiff provides specific dates from within the 300 days of filing the DHR Charge for at least two incidents that correspond to allegations plaintiff made in the DHR Charge: when Parker allowed a black employee to sign in late—whereas Parker generally issued plaintiff notices of discipline for when she arrived late—and when plaintiff was disciplined for registering a car incorrectly.

Defendant argues plaintiff failed to exhaust the claims that were not asserted in the DHR Charge. Relying on Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1403 (2d Cir. 1993) superseded by statute on other grounds, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072, defendant argues plaintiff's new claims are not reasonably related to her claims in the DHR Charge because the claims in the DHR Charge are time-barred.

Because the Court finds plaintiff has sufficiently alleged the claims in the DHR Charge are not time-barred, defendant's argument that plaintiff's remaining claims are not reasonably related to her claims in the DHR Charge fails.

Accordingly, plaintiff has sufficiently alleged her Title VII claims are timely and exhausted.

IV.     Failure to State a Claim

    Defendant argues plaintiff fails to state Title VII claims for retaliation, hostile work

environment, or discrimination.

    The Court agrees as to plaintiff's retaliation and hostile work environment claims, but

disagrees as to plaintiff's discrimination claim.

    A.     Retaliation

    To state a Title VII retaliation claim, a plaintiff "must plausibly allege that:

(1) defendants discriminated—or took an adverse employment action—against him,

(2) 'because' he has opposed any unlawful employment practice."  Vega v. Hempstead Union

Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–3(a)).  In the context

of a Title VII retaliation claim, "an adverse employment action is any action that 'could well

dissuade a reasonable worker from making or supporting a charge of discrimination.'"  Id.

(quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)).

    "As for causation, a plaintiff must plausibly plead a connection between the act and his

engagement in protected activity."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 90

(citing 42 U.S.C. § 2000e–3(a)).  "Moreover, the plaintiff must allege that the retaliation was the

'but-for' cause of the employer's adverse action, i.e., that 'the adverse action would not have

occurred in the absence of the retaliatory motive.'"  Riddle v. Citigroup, 640 F. App'x 77, 79 (2d

Cir. 2016) (summary order).  "'Trivial harms' or 'petty slights or minor annoyances' do not

constitute materially adverse employment action."  Rasko v. N.Y.C. Admin. for Children's

Servs., 2018 WL 2253127, at *2 (2d Cir. May 17, 2018) (summary order) (quoting Tepperwein v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568 (2d Cir. 2011)).

"A retaliatory purpose can be shown indirectly by timing:  protected activity followed closely in time by adverse employment action." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 90.  The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001).  However, "the temporal proximity must be 'very close.'" Riddle v. Citigroup, 640 F. App'x at 79 (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)).  "[T]he Second Circuit has previously found that 'even a four-month interval . . . is insufficient in itself to establish the [necessary] causal connection' and 'action taken twenty months after the protected activity suggests, by itself, no causality at all.'" Miller v. Mchugh, 2016 WL 698147, at *6 (S.D.N.Y. Feb. 19, 2016) (quoting Perry v. NYSARC, Inc., 424 F. App'x 23, 26 (2d Cir. 2011) (summary order)).

Plaintiff alleges she filed complaints in August 2014 and on May 29 and November 24, 2015.  Plaintiff further alleges she was constructively terminated when she resigned on October 16, 2017.  The gap of almost two years from plaintiff's last complaint is too long to support plaintiff's retaliation claim.

Plaintiff's other allegations of adverse employment actions are insufficient.  First, plaintiff's allegation that Parker said to plaintiff, "You bothered one of us, you bothered all of us" (AC ¶ 32), in retaliation for filing a complaint, and said to other employees that "Snitches get stitches" (AC ¶¶ 23–24, Opp'n at 4), are "nothing more than petty slights." Rasko v. N.Y.C.

<u>Admin. for Children's Servs.</u>, 2018 WL 2253127, at *3.  Second, plaintiff's allegation that

Parker required plaintiff to get a new note after coming back from sick leave, causing plaintiff to

miss a day of work, does not constitute an adverse act.  <u>See id.</u> ("denial of a partial day off does

not constitute an adverse act") (citing <u>Rivera v. Rochester Genesee Reg'l Transp. Auth.</u>, 743

F.3d 11, 25–26 (2d Cir. 2014)).

Accordingly, plaintiff fails to state a retaliation claim.

B.      <u>Hostile Work Environment</u>

"To establish a hostile work environment under Title VII, [Section] 1981, or [Section]

1983, a plaintiff must show that the 'workplace is permeated with discriminatory intimidation,

ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment.'"  <u>Littlejohn v. City of New York</u>, 795

F.3d 297, 320–21 (2d Cir. 2015) (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993)).

However, to survive a motion to dismiss, "a plaintiff need only plead facts sufficient to support

the conclusion that she was faced with 'harassment . . . of such quality or quantity that a

reasonable employee would find the conditions of her employment altered for the worse.'"

<u>Patane v. Clark</u>, 508 F.3d 106, 113 (2d Cir. 2007) (quoting <u>Terry v. Ashcroft</u>, 336 F.3d 128, 148

(2d Cir. 2003)).

"[A] work environment's hostility should be assessed based on the totality of the

circumstances."  <u>Patane v. Clark</u>, 508 F.3d at 113 (internal quotation marks omitted).  "Factors

that a court might consider in assessing the totality of the circumstances include:  (1) the

frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and

humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an

employee's work performance." Id. (internal quotation marks omitted). "[W]hether a particular work environment is objectively hostile is necessarily a fact-intensive inquiry." Id. at 114.

"Hostile work environment is not a vehicle for resurrecting time-barred claims of discrimination and retaliation; it is a wholly separate cause of action designed to address other types of work place behavior, like constant jokes and ridicule or physical intimidation." Magadia v. Napolitano, 2009 WL 510739, at *17 (S.D.N.Y. Feb. 26, 2009) (emphasis in original). Allegations of "discrete, adverse employment decisions concerning promotions, discipline, and appraisal, and about employer criticism" are insufficient to state a claim for hostile work environment. Olivier v. County of Rockland, 2018 WL 401187, at *5 (S.D.N.Y. Jan. 11, 2018) (quoting Magadia v. Napolitano, 2009 WL 510739, at *17)).

Plaintiff's allegations are insufficient to support a hostile work environment claim. The majority of plaintiff's allegations concern the denial of overtime opportunities and disciplinary decisions allegedly taken on account of her race. These are discrete, adverse employment decisions. To the extent plaintiff alleges Parker insulted her by calling black employees "brother," "sister," and "Brother Malcolm," these comments are certainly not insults, nor were they directed at plaintiff.

Plaintiff argues she was constructively discharged. Because the standard for constructive discharge stemming from an alleged hostile work environment "is higher than the standard for establishing a hostile work environment," plaintiff's constructive discharge claim, to the extent she makes one, fails. See Roman-Malone v. City of New York, 2013 WL 3835117, at *9 (S.D.N.Y. July 25, 2013) (quoting Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 725 (2d Cir. 2010)).

Accordingly, plaintiff fails to state a hostile work environment claim.

C.       Discrimination

Plaintiff has, however, sufficiently alleged a Title VII discrimination claim.

To state a Title VII claim, a plaintiff must "allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 85 (citing 42 U.S.C. § 2000e–2(a)(1)).

"[A]n employer discriminates against a plaintiff by taking an adverse employment action against him." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 85. "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (internal quotation marks omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id. (internal quotation marks omitted). A plaintiff's allegation that, "because he was Caucasian, he received less overtime and work breaks than other employees, and that sick and annual leave policies were applied differently to him," may be sufficient to state a discrimination claim. DiPetto v. U.S. Postal Serv., 383 F. App'x 102, 104 (2d Cir. 2010) (summary order) (citing Erickson v. Pardus, 551 U.S. 89, 93 (2007)).

"[A]t the pleadings stage of an employment discrimination case, a plaintiff has a minimal burden of alleging facts suggesting an inference of discriminatory motivation." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 85 (internal quotation omitted) (emphasis in original). "Plaintiff can raise an inference of discrimination 'by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated

employee outside his protected group.'" Whittle v. County of Sullivan, 2017 WL 5197154, at *7 (S.D.N.Y. Nov. 8, 2017) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)).

Plaintiff has sufficiently stated an adverse employment action. Plaintiff alleges, among other things, she was denied the opportunity to earn overtime over the course of many years, and she received notices of discipline for arriving late, which were used for compensation and termination decisions, performance evaluations, and other determinations that could lead to materially adverse changes in plaintiff's employment.

Further, plaintiff has pleaded sufficient facts to raise an inference of discrimination. Specifically, plaintiff alleges she was treated differently from black employees with the same positions and job responsibilities, who reported to the same supervisors.

Accordingly, dismissal of plaintiff's discrimination claim is not appropriate at this time.

V.      Leave to Amend

Plaintiff requests leave to file a second amended complaint to add Andrea Parker to the caption and to assert Section 1981 and Section 1983 discrimination and retaliation claims against Parker.

The Court concludes justice requires granting plaintiff's request, but only as to Section 1981 and Section 1983 discrimination claims.

"Where a proposed amendment adds new parties, the propriety of amendment is governed by Rule 21 of the Federal Rules of Civil Procedure." Toliver v. N.Y.C. Dep't of Corr., 2013 WL 3779125, at *15 (S.D.N.Y. July 8, 2013) (internal citation omitted). "Under Rule 21, a party may be added to an action 'at any time, on just terms.'" Id. (quoting Fed. R. Civ. P. 21). "In deciding whether to permit joinder, courts apply the same standard of liberality afforded to motions to amend pleadings under Rule 15." Id. (internal quotation omitted).

Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). The liberal application of Rule 15(a) is especially warranted with respect to a pro se litigant who "should be afforded every reasonable opportunity to demonstrate that he has a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000).

The Court has already afforded plaintiff substantial time and opportunity to assert claims against Parker. However, because the Court finds plaintiff may have valid Section 1981 and Section 1983 claims against Parker based on the allegations in plaintiff's amended complaint and opposition, and in light of the Court's obligation to "take appropriate measures to permit the adjudication of pro se claims on the merits," the Court finds justice requires granting plaintiff leave to amend. Triestman v. Fed. Bureau of Prisons, 470 F.3d at 477 n.6 (quoting Donald v. Cook Cty. Sherriff's Dep't, 95 F.3d 548, 555 (7th Cir. 1996)).

Allowing plaintiff to amend would not prejudice Parker. Discovery has not yet commenced, and the proposed claims are nearly identical to those raised in the amended complaint. See Randolph-Rand Corp. of N.Y. v. Tidy Handbags, Inc., 2001 WL 1286989, at *4 (S.D.N.Y. Oct. 24, 2001) (granting plaintiff leave to amend to add two defendants because the new claims were "identical to those raised in the original Complaint" and the addition of new defendants would not "materially affect the duration or scope of discovery").

Defendant argues amendment would be futile because plaintiff's claims are barred by the three-year statute of limitations for Section 1981 and Section 1983 claims. Defendant argues Parker was plaintiff's supervisor only until 2013, and under Fed. R. Civ. P. 15(c)(1)(C) plaintiff's claims against Parker do not relate back to the filing of the complaint.

The Court is not persuaded. Plaintiff may be able to state Section 1981 and Section 1983 discrimination claims against Parker, as plaintiff alleges Parker continued to supervise her until October 2017. Plaintiff's retaliation claims against Parker, however, would fail for the same reasons her Title VII retaliation claim against the DMV fails.

Because plaintiff merely seeks to add a defendant and does not seek to add new factual allegations, plaintiff need not file a second amended complaint. The Court will direct the Clerk to add Andrea Parker to the docket as a named defendant. The Second Amended Complaint will be deemed filed September 12, 2018.

## CONCLUSION

Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's cross-motion for leave to amend is GRANTED.

The only remaining claims are plaintiff's Title VII discrimination claim against the DMV and her Section 1981 and Section 1983 discrimination claims against Andrea Parker.

By September 26, 2018, defense counsel shall either (i) inform the Court it has accepted service on behalf of Andrea Parker; (ii) provide an address where Parker may be served; or (iii) provide any other information that may assist the Court in effectuating service of process.

The DMV shall file an answer by September 26, 2018.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk shall (i) add Andrea Parker to the docket as a named defendant and (ii) terminate the motion. (Doc. #21).

Dated: September 12, 2018
      White Plains, NY

                              SO ORDERED:

                              Vincent L. Briccetti
                              United States District Judge