UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MARY ANN CALISE,                                    :
                        Plaintiff,         :
                               :

v.                                                  :          **OPINION AND ORDER**
                               :
NEW YORK STATE DEPARTMENT OF                        :          17 CV 791 (VB)
MOTOR VEHICLES and ANDREA PARKER,                   :
in her individual capacity,                         :
                        Defendants.       :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Mary Ann Calise, proceeding pro se and in forma pauperis, brings this action

under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"),

and 42 U.S.C. § 1983 ("Section 1983"), alleging defendants New York State Department of

Motor Vehicles ("DMV") and Andrea Parker ("Parker") discriminated against her on account of

her race and color.

      Before the Court is defendants' motion for summary judgment.  (Doc. #87).

      For the reasons set forth below, defendants' motion is GRANTED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

      Defendants have submitted memoranda of law, a statement of material facts pursuant to

Local Civil Rule 56.1, declarations, and supporting exhibits.  Plaintiff has responded to

defendants' statement of material facts and filed a collection of documents in support of her

position.  Together, they reflect the following factual background.

      Plaintiff, a white woman, worked at a DMV office in White Plains, New York, as a

Motor Vehicles Representative from July 2008 until October 16, 2017.  In June 2009, after a

one-year probationary period, she became a non-probationary employee.

I.     Annual Performance Reviews

In 2010, plaintiff received an unsatisfactory annual evaluation from Nancy Pallo, a white woman who was plaintiff's supervisor for some time during 2010, and Sherraine Herron-Muir, then the manager of the White Plains DMV office. The 2010 evaluation covered plaintiff's employment from July 7, 2009, to July 7, 2010. The evaluation noted plaintiff's "time and attendance record has deteriorated during this period," and that plaintiff's attendance record "made it difficult for [her] to perform satisfactory [sic]." (Doc. #92 ("Thompson Decl.") Ex. 5 at 4).

The 2010 evaluation further noted plaintiff had fourteen cashiering errors during the period, totaling $578.55. Pursuant to DMV policy, having $100 in fee discrepancies is a threshold for an unsatisfactory report. Plaintiff also received two notices of discipline during this period. (Thompson Decl. Ex. 6). Plaintiff appealed her 2010 evaluation, but did not allege racial bias. (Doc. #91 ("Montena Decl.") Ex. 1). By letter dated June 22, 2012, the Statewide Performance Evaluation Appeals Board denied the appeal, finding plaintiff's 2010 unsatisfactory evaluation "justified." (Thompson Decl. Ex. 6).

In 2010, sometime after plaintiff received her 2010 evaluation, defendant Parker, an African-American woman, replaced Pallo as plaintiff's direct supervisor. In 2011, plaintiff received a second unsatisfactory annual evaluation, this time from Parker. The 2011 evaluation covered plaintiff's employment from July 7, 2010, to July 7, 2011. This evaluation noted plaintiff's ongoing problems with attendance and tardiness, five cashiering errors totaling $142, and an incident for which plaintiff had been disciplined for insubordination. (Thompson Decl. Ex. 7). Although the evaluation noted certain employment strengths, it also noted that, at times, plaintiff "exhibits a negative demeanor with some of the supervisors and co-workers." (Id.).

Plaintiff refused to sign, and did not appeal, her 2011 evaluation.

In 2012, plaintiff received her third unsatisfactory evaluation, again delivered by Parker. The 2012 evaluation covered plaintiff's employment from July 7, 2011, to August 4, 2012. It noted plaintiff's "numerous unscheduled absences," continued problems with tardiness and attendance, and "difficulty working with all her co-workers." (Thompson Decl. Ex. 8 at 5). During the relevant period, plaintiff had six cashiering errors, totaling $237.25, and was disciplined for "insubordination and unauthorized absences." (Id.).

Plaintiff refused to sign, and did not appeal, her 2012 evaluation.

In July 2013, Frank Chevere, a non-white male, replaced Parker as plaintiff's direct supervisor. Accordingly, Parker did not continue to directly oversee plaintiff's work after July 2013. However, Parker retained some authority over plaintiff, specifically on days when Parker managed the "Q," a system used at the White Plains DMV to assign customers to DMV staff.

In March 2014, plaintiff for the first time received a satisfactory annual evaluation, despite having three cashiering errors during the relevant period, totaling $100, and an unsatisfactory attendance record. (Thompson Decl. Ex. 9 at 5). Plaintiff received satisfactory evaluations for every subsequent year she was employed at DMV.

## II.    Overtime Eligibility and Hours

DMV employees are eligible for two different types of compensation for working more than 37.5 hours in a given week. The first 2.5 hours worked beyond the required 37.5 hours are designated as non-compensation overtime. An employee is credited for non-compensation overtime with an equivalent amount of leave that may be used during the next calendar year. Any additional work beyond forty hours in a given week is compensated at a time-and-a-half-rate.

Overtime distribution at DMV, and employee eligibility for same, is governed by a collective bargaining agreement ("CBA") between New York State and plaintiff's union. Pursuant to the CBA, "[a]vailable overtime shall first be offered on a rotating basis . . . in order of seniority." (Doc. #93 ("Pell Aff.") Ex. 1 §27.1). And if no employee accepts an offer to work overtime, it is "assigned on a mandatory basis to employees in reverse order of seniority." (Id.).

By-mid 2017, plaintiff ranked eleventh out of twenty employees on the White Plains DMV seniority list.

In fiscal year 2015, plaintiff attended work on 194 days.[1] She worked at least 7.5 hours on 156 days, and received overtime compensation on 95 of those days. In fiscal year 2016, plaintiff attended work on 134 days. She worked at least 7.5 hours on 114 days, and received overtime compensation on 84 of those days.

III.    Absences, Discipline, and Resignation

By mid-2017, plaintiff had received sixty counseling memoranda: twenty-four for attendance issues; twenty-five for cashiering issues; ten for work performance; and one for inappropriate behavior. Counseling memoranda, as opposed to notices of discipline, do not result in any disciplinary action.

Also by mid-2017, plaintiff received three notices of discipline for unauthorized absences, three for insubordination, and three for cashiering errors. Plaintiff received a monetary penalty for each of these notices.

On June 9, 2017, DMV issued plaintiff a tenth notice of discipline, informing plaintiff that DMV intended to terminate plaintiff for "incompetence and/or misconduct for [plaintiff's]

---

[1]    New York State fiscal years run from April 1 of a given year to March 31 of the following year.

Excessive Unscheduled Absences as outlined in the Statement of Disciplinary Charges."
(Thompson Decl. Ex. 10). The notice of discipline stated that from December 29, 2016, through
June 2, 2017, plaintiff incurred unscheduled absences over the course of 49 days, totaling 358
hours. The notice further indicated that plaintiff could contest the proposed discipline and
enumerated charges by filing a grievance with the Time and Attendance Disciplinary
Administrator.

Following her receipt of the June 9 notice of discipline, plaintiff showed up to work on
only thirty-one of the following ninety-one working days. (Montena Decl. Ex. 7).

On October 30, 2017, plaintiff sent a 12-page fax to the White Plains DMV, comprising
two complaints of discrimination and a hand-written letter of resignation dated October 16, 2017.
(Montena Decl. Ex. 8). Plaintiff's resignation letter stated she was "resigning from my position
solely for the reason of harassment and retaliation by Ms. Parker," who "has harassed, been
racist, and discriminated against me for many years." (Id.).

IV.    Complaints of Discrimination

The parties dispute the nature of the hostility between plaintiff and Parker, but the parties
agree their working relationship was not amicable. As noted above, Parker was plaintiff's direct
supervisor from mid-2010 to July 2013. And even though Parker was replaced as plaintiff's
direct supervisor in July 2013, Parker retained some supervisory authority over plaintiff. Indeed,
on days when Parker managed the Q system and assigned customers to DMV staff, Parker was
responsible for tracking employee breaks and overtime, including for plaintiff.

Plaintiff claims she was told by other DMV employees early in her employment that
Parker disliked white people. Plaintiff alleges Parker consistently harassed, retaliated against,
and treated plaintiff differently than other employees because plaintiff is white. Specifically,

plaintiff claims Parker denied her opportunities to earn overtime, and instead provided all overtime opportunities to non-white employees. Plaintiff further claims Parker frequently marked plaintiff late when she was tardy, but did not do the same when non-white employees were tardy. Plaintiff also claims she received counseling memoranda and notices of discipline for conduct that non-white employees also engaged in, but for which such employees did not receive counseling memoranda or discipline. Moreover, plaintiff claims that Parker promptly assisted non-white employees in obtaining ergonomic chairs when needed, but for years ignored plaintiff's requests for same. Plaintiff also asserts Parker gave plaintiff unsatisfactory evaluations in 2011 and 2012 because plaintiff is white.

Although plaintiff largely failed to identify—in her amended complaint, in her responses to defendants' interrogatories, and during her deposition—specific instances and dates of conduct she alleges was discriminatory, she claims the following interactions demonstrate the pervasive discriminatory animus she endured at the DMV and from Parker.

On December 21, 2010, plaintiff refused to attend a meeting with Parker, Parker's direct supervisor Yvonne Dukes, and Herron-Muir, the office manager, which resulted in a notice of discipline for failure to follow directives. Plaintiff alleges Parker, Dukes, and Herron-Muir wanted to meet with plaintiff to intimidate her and make fun of her, because she is white.

Plaintiff was disciplined for insubordination in each of the two evaluation periods when Parker was her supervisor—2011 and 2012. Plaintiff contends she received such discipline because of Parker's discriminatory animus.

In January 2012, plaintiff filed a grievance concerning Parker. According to plaintiff, Parker chastised two other supervisors—Nicole Pallo and Becky Kramer—because Parker did not approve of the way Pallo and Kramer were handling a request from plaintiff to leave work to

attend a funeral. In response, plaintiff called Parker a bully. Parker then wrote "bully" on a piece of paper and posted the paper at Parker's workstation. Plaintiff contends such conduct was discriminatory and inappropriate. René Torres, the office director at the time, denied plaintiff's grievance, concluding Parker did not discriminate against plaintiff. However, Torres noted Parker's conduct was inappropriate.

On March 10, 2015, Parker and another supervisor, Eve Larochelle, were having a private conversation, during which Parker used the phrase "snitches get stitches." (Doc. #16 ("Am. Compl.") ¶ 24). The parties dispute the details of this incident. Plaintiff claims Parker and Larochelle were discussing a complaint, made by plaintiff, that Parker and other employees should not be allowed to play gospel music at the DMV. Plaintiff contends that while discussing the situation with Larochelle, Parker turned to plaintiff and remarked, "snitches get stitches." Plaintiff claims such comment was racially discriminatory. Parker contends she did not direct that phrase toward plaintiff, and that she used the term "snitches get stiches" during the conversation to reference lyrics of a song that her supervisor, Dukes, used to sing in the office, which included the phrase.

On another occasion, when Parker was no longer plaintiff's direct supervisor, Parker was instructed to conduct a random audit of plaintiff's station. Plaintiff refused to allow Parker to audit her station because, according to plaintiff, "it was a known fact that we didn't get along." (Thompson Decl. Ex. 2 ("Calise Tr.") at 430).[2] Plaintiff contends Parker's attempt to audit her station was discriminatory.

---

[2] Plaintiff was deposed on February 25, 2019, and again on April 30, 2019. The transcripts of plaintiff's testimony on these dates are consecutively paginated and were filed as separate exhibits to James Thompson's July 1, 2019, Declaration. (Thompson Decl. Exs. 1, 2). The Court will refer to these exhibits collectively as "Calise Tr."

And in late September 2017, Parker allegedly required plaintiff to get a note from her doctor after being out on sick leave, causing plaintiff to lose a day's salary by making her go home to retrieve it. According to plaintiff, "black employees were not required to get new notes from their doctors when they came back to work." (Am. Compl. ¶ 30).

Plaintiff further claims Parker made several racially tinged comments at work. First, plaintiff claims Parker frequently referred to Malcolm Cotes, an African-American employee, as "Brother Malcolm." According to plaintiff, Parker understood that referring to Malcolm Cotes as Brother Malcolm bothered plaintiff and made her uncomfortable, and that Parker continued to do so to agitate plaintiff. Second, although plaintiff's amended complaint does not allege Parker made racist remarks to plaintiff directly, plaintiff asserted in interrogatory responses and at her deposition, that, on occasion, Parker called plaintiff "dumb white girl," "token white girl," and "Sherraine [Herron-Muir]'s white daughter." (Calise Tr. at 44–45, 49, 335). Parker denies making such comments.

In addition to plaintiff's complaints against Parker personally, plaintiff asserts the DMV fostered a discriminatory working environment. Specifically, during her deposition, plaintiff testified that a dozen or so non-white co-workers engaged in acts of racial discrimination against plaintiff. Indeed, plaintiff alleges the leadership at the White Plains DMV frequently "covered for each other" and allowed a pervasive anti-white culture to resonate throughout the office. (Calise Tr. at 440). And, according to plaintiff, on one occasion, Parker told plaintiff, "you mess with one of us you mess with all of us." (Id. at 311).

V.    New York State Division of Human Rights Charge of Discrimination

On May 29, 2015, plaintiff filed a charge of discrimination with the New York State

Department of Human Rights ("NYSDHR").  In her complaint to NYSDHR, plaintiff alleged

Parker:  (i) referred to plaintiff as the office snitch; (ii) promoted racial disparities by listening to

gospel music and by calling another African-American employee "Brother Malcolm"; (iii)

allowed non-white employees, but not plaintiff, to arrive to work late but sign in as if they had

arrived on time; (iv) denied plaintiff personal leave time and other privileges, which she allowed

others; (v) denied plaintiff overtime pay; (vi) required plaintiff, but not other employees, to

inform her when plaintiff wanted to take a bathroom break; and (vi) redirected customers from

plaintiff to other employees.  (Montena Decl. Ex. 14).  Plaintiff did not provide the dates when

these events allegedly occurred.  However, in the NYSDHR complaint, plaintiff wrote that the

most recent act of discrimination occurred on April 14, 2015.

On November 25, 2015, NYSDHR issued a "Determination and Order After

Investigation" dismissing plaintiff's charge.  (Thompson Decl. Ex. 12).  Because Parker was

removed as plaintiff's supervisor in 2013, NYSDHR found the alleged acts occurred more than

one year prior to the filing of the charge.  NYSDHR thus found plaintiff's claims were time-

barred under the New York State Human Rights Law and fell "outside the purview of review by

[NYSDHR]."  (Id. at 2).

VI.    Procedural History

On January 31, 2017, plaintiff commenced this action against the United States Equal

Opportunity Commission ("EEOC") and DMV, alleging claims under Title VII, for

discrimination and retaliation, the Americans with Disabilities Act ("ADA"), and the New York

State Human Rights Law.  (Doc. #1).

By Order dated February 14, 2017, the Court dismissed plaintiff's ADA and state law claims, and dismissed all claims against the EEOC.  (Doc. #5).

By Order dated August 7, 2017, the Court granted plaintiff leave to file an amended complaint.  (Doc. #14).  Plaintiff did so on November 20, 2017.  (Doc. #16).  On January 18, 2018, DMV moved to dismiss the amended complaint.  (Doc. #21).

By Order dated September 12, 2018, the Court granted in part and denied in part DMV's motion, dismissing all claims against DMV except for plaintiff's Title VII discrimination claim.  (Doc. #34).  The Order further construed the amended complaint to assert Section 1981 and 1983 claims against Parker, permitted plaintiff to add Parker as a party defendant, and allowed those claims against Parker to proceed.  (Id.).

Following the close of discovery, defendants moved for summary judgment on plaintiff's remaining Title VII, and Sections 1981 and 1983 discrimination claims.  (Doc. #87).

## DISCUSSION

I.    Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[3]

A fact is material when it "might affect the outcome of the suit under the governing law. . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[3]      Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 322–23. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury reasonably could find for him. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need consider only evidence that would be admissible at trial. <u>Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.</u>, 164 F.3d 736, 746 (2d Cir. 1998). The burden to proffer evidence admissible pursuant to the Federal Rules of Evidence applies "equally to <u>pro</u> <u>se</u> litigants." <u>Varughese v. Mt. Sinai Med. Ctr.</u>, 2015 WL 1499618, at *4 (S.D.N.Y. Mar. 27, 2015) (citing <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 73 (2d Cir. 2001)).[4] Accordingly, bald assertions, completely unsupported by admissible evidence, are not sufficient to overcome summary judgment. <u>Carey v. Crescenzi</u>, 923 F.2d 18, 21 (2d Cir. 1991).

II. <u>Statutes of Limitation and Exhaustion</u>

A. <u>Title VII Claim</u>

DMV argues it is entitled to summary judgment on any claims concerning conduct predating August 2, 2014, and also any conduct that occurred after May 29, 2015.

The Court agrees with respect to conduct predating August 2, 2014, but disagrees with respect to any conduct that occurred after May 29, 2015.

"Title VII requires an aggrieved party to file a charge of discrimination with either the Equal Employment Opportunity Commission or the New York State Division of Human Rights ("NYSDHR") within 300 days of the alleged act of discrimination; the failure to do so will result in the claims being time-barred." <u>Johnson v. Buffalo Police Dep't</u>, 46 F. App'x 11, 13 (2d Cir. 2002) (summary order) (citing 42 U.S.C. § 2000e–5(e)).

Moreover, "[b]efore filing a Title VII claim in federal court, a plaintiff must exhaust all available administrative remedies." <u>Hoffman v. Williamsville Sch. Dist.</u>, 443 F. App'x 647, 649

---

[4]     Plaintiff will be provided copies of all unpublished opinions cited in this decision. <u>See</u> <u>Lebron v. Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009).

(2d Cir. 2011) (summary order).  Indeed, "[a]n allegation not set forth in an administrative charge will be barred as unexhausted unless it is reasonably related to the allegations in the charge."  Id. (citing Williams v. New York City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (per curiam)).  "A new allegation will be considered reasonably related if the administrative charge provided the [agency] with sufficient notice to investigate the allegation."  Id. (citing Williams v. New York City Hous. Auth., 458 F.3d at 70).

Here, plaintiff filed a charge of discrimination with NYSDHR on May 29, 2015, alleging instances of unlawful discriminatory practices relating to her employment because of, inter alia, "race/color."  (Thompson Decl. Ex. 12 at 1).  Due to Title VII's 300-day limitation period, plaintiff may not recover against DMV for any conduct predating August 2, 2014, which is 300 days before she filed the charge of discrimination.

Accordingly, DMV is entitled to summary judgment on plaintiff's Title VII discrimination claim inasmuch as that claim concerns conduct on the part of DMV that predates August 2, 2014.

However, DMV is not entitled to summary judgment, on exhaustion grounds, on plaintiff's Title VII claim inasmuch as it respects conduct occurring after the NYSDHR charge was filed on May 29, 2015.  At bottom, plaintiff's allegations respect conduct that is reasonably related to the allegations contained in her filed charge of discrimination, because all of the conduct complained of, both before and after May 29, 2015, concerns alleged discrimination based on race.

B.    Section 1981 Claim

Parker argues she is entitled to summary judgment on plaintiff's Section 1981 claim inasmuch as it concerns alleged conduct predating January 31, 2014.

The Court agrees.

Section 1981 race discrimination claims asserted against state actors are actionable pursuant to 42 U.S.C. § 1983.  Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989) (Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor").  "[T]he limitations period for § 1983 claims is borrowed from state law, which, in the case of New York, confers only a three-year period."  Duplan v. City of New York, 888 F.3d 612, 619 (2d Cir. 2018).

Plaintiff commenced the instant action on January 31, 2017, so the limitations period for plaintiff's discrimination claim against Parker extends back to January 31, 2014.  Accordingly, any complained-of conduct on the part of Parker, which predates January 31, 2014, is not actionable.

III.    Racial Discrimination

Defendants next argue they are entitled to summary judgment as a matter of law on plaintiff's Title VII and Section 1981 race discrimination claims.

The Court agrees.

A.    Legal Standard

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment."  Patterson v. County of Oneida, 375 F.3d 206, 224 (2d Cir. 2004).  The statute provides in pertinent part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and extractions of every kind, and to no other.

42 U.S.C. § 1981(a). The statute thus covers claims concerning racial discrimination in the workplace. See Lauture v. Int'l Bus. Machs. Corp., 216 F.3d 258, 261 (2d Cir. 2000).

Race discrimination claims pursuant to both Title VII and Section 1981 are analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015).

Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case. Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). To establish a prima facie case of discrimination, a plaintiff must show "(i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination." Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002). Plaintiff's "burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998).

"A plaintiff may make a prima facie case for an inference of discrimination by showing that a similarly situated individual not in [plaintiff's] protected group . . . was treated differently." Loucar v. Bos. Mkt. Corp., 294 F. Supp. 2d 472, 479 (S.D.N.Y. 2003). "If a comparison with another employee is to lead to an inference of discrimination," however, "it is necessary that the employee be similarly situated in all material respects." Staff v. Pall Corp., 233 F. Supp. 2d 516, 536 (S.D.N.Y. 2002).

Once a plaintiff presents a prima facie case, the defendant then bears the burden of articulating a legitimate, non-discriminatory reason for the employment action. Weinstock v. Columbia Univ., 224 F.3d at 42. If a defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude the employer's explanation is merely a pretext for actual discrimination. Id.

To satisfy the burden of showing pretext on summary judgment, a plaintiff must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." Weinstock v. Columbia Univ., 224 F.3d at 42. "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Id. Indeed, "[a] plaintiff's evidence at the third step of the McDonnell Douglas analysis must be viewed as a whole rather than in a piecemeal fashion." Walsh v. N.Y.C. Hous. Auth., 828 F.3d 70, 76 (2d Cir. 2016).

B.      Plaintiff's Complaints

 Defendants contend that, based on indisputable facts, no reasonable juror could conclude that plaintiff was discriminated against based on her race.

The Court agrees, and addresses in turn each allegedly adverse employment action.

1.      Overtime

Plaintiff has not adduced evidence demonstrating she was denied overtime, let alone evidence she was denied overtime on account of her race.

First, plaintiff contends that handwritten notes she attaches to her opposition demonstrate she was denied overtime on account of her race. However, unsworn "handwritten synopses . . . are inadmissible hearsay that are an insufficient basis for opposing a motion for summary

judgment." <u>Trinidad v. New York City Dep't of Corr.</u>, 423 F. Supp. 2d 151, 161 (S.D.N.Y. 2006) (quoting <u>Capobianco v. City of New York</u>, 422 F.3d 47, 55 (2d Cir. 2005)). Indeed, inadmissible hearsay is not sufficient to create a genuine issue of fact. <u>Id</u>. And here, such documents, even if admissible, fail to provide the context necessary to support an inference of discrimination.

Second, plaintiff's claim that she was regularly, unlawfully denied overtime is contradicted by undisputed record evidence. According to plaintiff's time records, she regularly did receive overtime, on the majority of days she showed up for work. For example, plaintiff received overtime on 61% of the 156 days she worked during fiscal year 2015. And she received overtime on 74% of the 114 days she worked during fiscal year 2016.

Third, plaintiff fails to adduce evidence that similarly situated non-white employees were preferentially granted overtime on account of race. Indeed, the CBA governing plaintiff's employment and the distribution of overtime at DMV requires that overtime be offered to employees in order of seniority. Plaintiff, who was not senior during her employment at DMV— she ranked eleventh out of twenty employees—fails to demonstrate that any non-white employees less senior than she were given overtime in her stead.

And fourth, even if plaintiff had demonstrated a <u>prima facie</u> case of discrimination with respect to opportunities for overtime, defendants' overtime distribution policy evidences a legitimate, non-discriminatory reason why certain employees received more overtime opportunities than did plaintiff, and plaintiff fails to identify any evidence that would permit a reasonable factfinder to conclude defendants' legitimate, non-discriminatory overtime policy was mere pretext for unlawful discrimination.

Accordingly, as a matter of law, defendants are entitled to summary judgment on plaintiff's discrimination claims inasmuch as they concern the purported denial of overtime.

       2.     <u>Sign-In Policy and Procedures</u>

Defendants next argue that, based on indisputable record evidence, plaintiff cannot demonstrate defendants discriminated against her with respect to the administration of sign-in procedures at the DMV.

The Court agrees.

Plaintiff's unsubstantiated assertions that she witnessed African-American employees arrive late and sign in on time, and that Parker permitted same, is insufficient to withstand defendants' summary judgment challenge. First, as discussed above, plaintiff's inadmissible handwritten notes cannot, as a matter of law, provide sufficient evidence to defeat summary judgment.

Second, even if plaintiff's handwritten notes were sufficient in this regard, the undisputed record evidence entirely contradicts plaintiff's assertions. For example, although plaintiff claims Melody Felder, an African-American employee, arrived late to work on September 30, 2015, and October 29, 2015, but was permitted to sign in on time, DMV's sign-in records demonstrate Felder was marked tardy on those dates. (<u>See</u> Montena Decl. Exs. 15, 16). Similarly, plaintiff claims Felder and Monique Woodfaulk, another African-American employee, were tardy, but marked on time, on July 25, 2015, but that day's sign-in sheet demonstrates Felder and Woodfaulk were accurately marked tardy. (<u>See</u> Montena Decl. Ex. 17).

Third, the undisputed record evidence demonstrates that, just like plaintiff, Felder, Woodfaulk, and other non-white employees were marked tardy on numerous occasions, and received counseling memoranda and notices of discipline for same. The undisputed record

evidence further demonstrates that Parker herself received a counseling memorandum detailing multiple instances when Parker was tardy. (See Montana Decl. Ex. 22).

Fourth, plaintiff fails to adduce any evidence that the White Plains DMV's grace-period policy—allowing employees up to fifteen minutes of tardiness per week—was applied preferentially to non-white employees. Specifically, plaintiff does not present evidence that the grace-period policy did not also apply to her, or that she was inappropriately marked tardy in derogation of the policy. Thus, even if certain non-white employees were, on occasion, not marked late, plaintiff fails to explain how the grace-period policy, which is a legitimate, non-discriminatory reason why certain employees might not be marked late even if tardy, was mere pretext for unlawful discrimination.

Accordingly, based on the undisputed record evidence, plaintiff cannot demonstrate a prima facie case of discrimination with respect to employee sign-in procedure and the enforcement of same. And even if plaintiff could meet this burden, she fails as a matter of law to demonstrate that DMV's sign-in procedures were merely pretext for impermissible racial discrimination.

### 3. Unsatisfactory Annual Evaluations

As noted above, plaintiff's discrimination claims are time-barred inasmuch as they concern any conduct on the part of DMV that predates August 2, 2014, and any conduct on the part of Parker that predates January 31, 2014.

Thus, plaintiff's claims that Parker discriminated against plaintiff on account of her race, when she gave plaintiff unsatisfactory evaluations in 2011 and 2012, and that Herron-Muir discriminated against plaintiff when she reviewed and approved plaintiff's unsatisfactory annual evaluation in 2010, are time-barred.

Yet, even if such claims were not time-barred, plaintiff has not adduced any evidence that gives rise to an inference of racial discrimination concerning her unsatisfactory evaluations, nor has she adduced any evidence that defendants' proffered non-discriminatory reasons for plaintiff's unsatisfactory evaluations were mere pretext for unlawful discrimination. In other words, plaintiff fails to provide evidence from which a reasonable factfinder could find a nexus between her unsatisfactory evaluations and her race.

The undisputed record evidence demonstrates that during the relevant periods, plaintiff committed numerous cashiering errors above the $100 annual threshold for unsatisfactory evaluations. Further, plaintiff's unsatisfactory evaluations were also attributable to her poor attendance record during those periods. And while plaintiff disagreed with her 2010 evaluation, and unsuccessfully appealed that evaluation, she neither appealed nor challenged her 2011 and 2012 evaluations. Moreover, the record evidence demonstrates that Parker gave at least one African-American employee an unsatisfactory evaluation during her tenure as a supervisor.

Accordingly, plaintiff fails to raise triable issues of fact concerning her unsatisfactory annual evaluations or demonstrate a prima facie case of discrimination concerning same.

4.     Ergonomic Chair Request

Defendants next argue plaintiff's discrimination claim concerning defendants' failure to timely provide plaintiff a special chair to accommodate her medical conditions is time-barred.

The Court agrees.

Plaintiff alleges that in 2011, 2012, and 2013, she submitted letters requesting a special chair to accommodate her medical condition, and that defendants ignored these requests on account of her race. Again, as noted above, plaintiff's claims against DMV are timely only inasmuch as they concern conduct occurring on or after August 2, 2014, and with respect to

claims against Parker, for conduct occurring on or after January 31, 2014. Accordingly, plaintiff's discrimination claim is time-barred inasmuch as it concerns plaintiff's 2011–2013 requests for an ergonomic chair.

Moreover, the record is devoid of any indication that, in 2011 and 2012, plaintiff submitted a request for a special chair. And as for plaintiff's 2013 request—which is documented—the record demonstrates such request was both processed and granted. (Thompson Decl. Ex. 19). Indeed, plaintiff received an ergonomic chair of her choice in early 2014. Accordingly, even if not time-barred, plaintiff fails to adduce any facts giving rise to an adverse employment action with respect to her 2013 chair request.

### 5. Miscellaneous Complaints

Plaintiff's remaining miscellaneous complaints of racial discrimination at the White Plains DMV fare no better. Fatally, the undisputed record does not give rise to an inference that plaintiff suffered an adverse employment action despite the laundry list of complaints plaintiff has raised, and added to, during this litigation.

For example, Parker's tendency to call a fellow African-American employee "Brother Malcolm," or Parker's and other employees' tendencies to sing or play gospel music in the office, or certain supervisors' tendencies to assign plaintiff to different lunch shifts preventing plaintiff from socializing with certain colleagues, even if true, do not create material issues of fact with respect to an adverse employment action suffered by plaintiff. Nor does Parker's posting on her desk a sign reading "bully," even though such posting was deemed inappropriate. And neither does plaintiff's bare assertion that Parker, on occasion, denied plaintiff breaks or opportunities to make personal phone calls at work. This is because plaintiff cannot, as a matter of law, demonstrate that such conduct materially affected her employment in an adverse way.

See Cunningham v. N.Y. State Dep't of Labor, 326 F. App'x 617, 619 (2d Cir. 2009) (summary order) ("As we have previously held, everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions.").

To be clear, "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus" may give rise to an inference of discrimination. Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996). But "rude and derogatory" comments, absent any discriminatory connotation, are not enough to establish a Title VII or Section 1981 discrimination claim. See Bickerstaff v. Vassar Coll., 196 F.3d 435, 452 (2d Cir. 1999). These statutes are not "general civility code[s]." Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)).

Here, the record evidence, which the Court has considered as a whole, indicates, at most, a clash of personalities between plaintiff and Parker or others at the White Plains DMV. However, and importantly, the record does not evince material issues of fact concerning plaintiff's race discrimination claims.

For the reasons set forth herein, and based on the undisputed evidentiary record, defendants are entitled to summary judgment.

**CONCLUSION**

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #87) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order

would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose

of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: March 18, 2020
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge